IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-369-D

NATHANIEL N. TORRES          )
                             )
                Plaintiff,   )
                             )              **ORDER**
        v.                   )
                             )
DUKE ENERGY PROGRESS, LLC,   )
                             )
                Defendant.   )

On March 28, 2023, Nathaniel N. Torres ("Torres" or "plaintiff") filed an amended complaint

against Duke Energy Progress, LLC ("DEP" or "defendant") alleging violations of Title VII of the

Civil Rights Act and 42 U.S.C. § 1981. See Am. Compl. [D.E. 27]. On June 2, 2023, DEP moved

to dismiss Torres's hostile work environment claims for failure to state a claim upon which relief

can be granted [D.E. 32] and filed a memorandum in support [D.E. 33]. On June 21, 2023, Torres

responded in opposition [D.E. 36]. On July 5, 2023, DEP replied [D.E. 37]. As explained below,

the court grants DEP's motion to dismiss Torres's hostile work environment claims.

I.

In April 2018, a staffing company placed Torres with DEP. See Am. Compl. ¶ 2. Torres

worked as a project manager at DEP from April 2018 to May 2021. See id. Beginning in 2019, DEP

employee Daphne Richardson ("Richardson") supervised Torres. See id. at ¶ 3. Richardson

supervised a team of four project managers—Torres (a black/Hispanic male) and three others (white

males). See id. Richardson also supervised a fifth project manager, a black male, who voluntarily

left DEP while Richardson was supervising him. See id.

According to Torres, Richardson subjected Torres "to disparate treatment compared to the other three white project managers." Id. at ¶ 4. Richardson also allegedly remarked that "people of Mr. Torres' race and ethnic background are less stable, less organized, and less structured." Id. at ¶ 6. The amended complaint, however, clarifies that Richardson never mentioned Torres's race when she made this comment. See id. at ¶ 36. Rather, Torres "inferred that the 'structure' Ms. Richardson referred to was related to race" because when Richardson made the comment she also mentioned that she once heard Torres's daughter in the background of a Microsoft Teams meeting but had never heard Jason Keim's children during a Microsoft Teams call. Id. Keim is a white male who Richardson also supervised. See id. After Richardson's comment about Torres's daughter, Torres replied that his daughter's day care was closed due to COVID and that Keim's children were older. See id. at ¶ 37. In the same conversation, Richardson then allegedly told Torres that "minorities have to work harder." Id. Torres also alleges that Richardson "applied different standards" to Torres's management work when compared to Torres's white colleagues. Id. at ¶ 7. Richardson also allegedly denied Torres the opportunity to work on a low complexity project and had Torres complete various undefined "tasks" not related to Torres's duties. See id. at ¶¶ 35, 41.

In February 2021, Torres reported Richardson's behavior to Bruce Pierce ("Pierce"), a DEP employee managing Richardson. See id. at ¶ 8. Torres reported that he felt Richardson was discriminating against him due to his race and ethnicity and that Richardson's conduct put Torres in jeopardy of not being rehired at DEP. See id. at ¶¶ 9–10. In March 2021, Richardson sent an email to Torres's staffing company complaining about Torres's job performance. See id. at ¶ 11. In May 2021, DEP terminated Torres from his position. See id. at ¶ 12. Torres alleges that Richardson orchestrated Torres's termination in retaliation for Torres complaining about Richardson's conduct to Pierce. See id. at ¶ 14.

2

## II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [its] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion

3

for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

DEP argues that Torres fails to allege conduct sufficiently severe or pervasive to support a hostile work environment claim under Title VII or section 1981. See [D.E. 33] 4–8.[1] Torres argues that his allegations of "ongoing discriminatory conduct" and allegations about Richardson's comments to Torres suffice to maintain his hostile work environment claims. See [D.E. 36] 4.

To demonstrate a hostile work environment claim, an employee must prove that (1) he experienced unwelcome conduct, (2) the conduct was based on a protected characteristic under the relevant statute, (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) the conduct is imputable to the employer. See, e.g., Laurent-Workman v. Wormuth, 54 F.4th 201, 210–12 (4th Cir. 2022); Chapman v. Oakland Living Ctr., Inc., 48 F.4th 222, 229 (4th Cir. 2022); Perkins v. Int'l Paper Co., 936 F.3d 196, 207–08 (4th Cir. 2019); Parker v. Reema Consulting Servs., Inc., 915 F.3d 297, 302 (4th Cir. 2019); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc); Okoli v. City of Balt., 648 F.3d 216, 220–21 (4th Cir. 2011); E.E.O.C. v. Fairbrook Med. Clinic, P. A., 609 F.3d 320, 327 (4th Cir. 2010); Ziskie v. Mineta, 547 F.3d 220, 224 (4th Cir. 2008); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc); Coleman v. Altec, Inc., No. 5:16-CV-954, 2018 WL 4289610, at *3 (E.D.N.C. Sept. 7, 2018) (unpublished); Brown v. Wake Cnty. Gov't, No. 5:16-CV-806, 2017 WL 2982971, at *5 (E.D.N.C. July 12, 2017) (unpublished).

---

[1] The court analyzes the hostile work environment claims under Title VII and section 1981 in the same way. See Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004); Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 543–45 (4th Cir. 2003); Henry v. Vaughn Indus., LLC, 450 F. Supp. 3d 671, 678 n.2 (E.D.N.C. 2020).

4

An employee also must show that his protected characteristic was the "but for" cause of the alleged harassment. See, e.g., Gilliam v. S.C. Dep't of Juv. Just., 474 F.3d 134, 142 (4th Cir. 2007).

To determine whether conduct was sufficiently severe or pervasive to alter the employee's terms and conditions of employment and create an abusive working environment based on a protected characteristic, the court examines the allegations both subjectively and objectively. See, e.g., Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993). First, the employee must subjectively consider the conduct to be sufficiently severe or pervasive as to alter his conditions of employment. See, e.g., Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001) (per curiam); Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998); Boyer-Liberto, 786 F.3d at 277. Second, a court views the conduct from the perspective of a reasonable person in the employee's position to determine whether it is objectively severe or pervasive. See, e.g., Breeden, 532 U.S. at 271; Faragher, 524 U.S. at 787–88; Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81–82 (1998); Boyer-Liberto, 786 F.3d at 277.

The objective component helps courts "to police the baseline for hostile environment claims." Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc) (quotation omitted). The court considers all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Forklift Sys., Inc., 510 U.S. at 23; see Parker, 915 F.3d at 304. The conduct must be severe or pervasive to be actionable. See Forklift Sys., Inc., 510 U.S. at 23; Faragher, 524 U.S. at 787–88; Boyer-Liberto, 786 F.3d at 277–78. Title VII and section 1981 do not create "a general civility code for the American workplace." Oncale, 523 U.S. at 80; see Irani v. Palmetto Health, 767 F. App'x 399, 416 (4th Cir. 2019) (per curiam) (unpublished). Rather, the "conduct must . . . amount to a change in the

5

terms and conditions of employment." Faragher, 524 U.S. at 788; see Boyer-Liberto, 786 F.3d at 277–81. Simple teasing, sporadic rude language, offhand comments, jokes related to a protected status, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. See Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68–69 (2006); Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 788; cf. Chapman, 48 F.4th at 228–34; Boyer-Liberto, 786 F.3d at 277–81. Likewise, mere rude or insensitive treatment cannot sustain a hostile work environment claim. See, e.g., Bonds v. Leavitt, 629 F.3d 369, 385–86 (4th Cir. 2011); Baqir v. Principi, 434 F.3d 733, 746–47 (4th Cir. 2006), abrogated on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009); see also Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 787–88; Oncale, 523 U.S. at 81–82; cf. Chapman, 48 F.4th at 228–34; Boyer-Liberto, 786 F.3d at 277–81; Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 207–10 (4th Cir. 2014); Freeman v. Dal-Tile Corp., 750 F.3d 413, 420–24 (4th Cir. 2014); Okoli, 648 F.3d at 220–22. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by simple recitation of the words used or the physical acts performed." Oncale, 523 U.S. at 81–82. "Common sense, and an appropriate sensitivity to social context," will enable courts to distinguish between teasing, distasteful jokes, sporadic rude language, vulgarity, stupidity, offhand comments, and insensitive treatment and "conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive" based on a protected characteristic. Id. at 82 (emphasis added); Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 772–73 (4th Cir. 1997).

Although hostile work environment claims often involve repeated conduct, an "isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious." Boyer-Liberto, 786 F.3d at 277 (quotations and

6

alterations omitted); see Pryor v. United Air Lines, Inc., 791 F.3d 488, 496 (4th Cir. 2015); Okoli, 648 F.3d at 220 & n.5. A "supervisor's power and authority invests his or her harassing conduct with a particular threatening character." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 763 (1998); see Boyer-Liberto, 786 F.3d at 278.

Torres has failed to plausibly allege that he was subject to conduct severe or pervasively abusive enough to maintain a hostile work environment claim under Title VII or section 1981. The amended complaint vaguely alleges undefined "ongoing discriminatory conduct" and that "[o]ver time Ms. Richardson's racially disparate treatment of Plaintiff became more overt." [D.E. 36] 4; Am. Compl. ¶ 5. Torres also references two allegedly discriminatory statements Richardson made during one conversation, including that a white employee had "more structure in his home" than Torres and that "minorities have to work harder." Am. Compl. ¶¶ 6, 36–37. The alleged conduct and isolated comments do not rise to the level of severity or pervasiveness necessary to alter the terms and conditions of employment. See, e.g., Breeden, 532 U.S. at 270–71; Oncale, 523 U.S. at 81; Baqir, 434 F.3d at 746–47; Tims v. Carolinas Healthcare Sys., 983 F. Supp. 2d 675, 681 (W.D.N.C. 2013).

In opposition, Torres cites Butler v. Schapiro, 839 F. Supp. 2d 252, 257 (D.D.C. 2012), and argues that a supervisor's comments, taken with negative performance reviews and job assignments, suffice for a hostile work environment claim. Butler is distinguishable. In Butler, the plaintiff alleged myriad, specific instances of ongoing discriminatory treatment over a one-year period, including "various racist comments," repeatedly asking plaintiff if she spent too much time "working on the SEC's African-American Council," repeated comments that plaintiff was lazy, dishonest, and incompetent, forcing plaintiff to complete separate leave forms daily for four months in order to receive maternity leave, and plaintiff having to repay her salary repeatedly because plaintiff's

7

supervisor refused to approve requests for leave. See id. at 256–57. Here, in contrast, Torres only makes general, vague allegations about Richardson's conduct, including two specific comments in one conversation concerning Torres's race, one instance where Richardson denied Torres's request for a "low complexity project," and that Torres had to complete undefined "tasks" that other managers did not have to perform. [D.E. 36] 6; Am. Compl. ¶ 41. Moreover, unlike in Butler, this alleged discriminatory conduct took place over a 37-month period. See Am. Compl. ¶ 2. Torres's allegations do not compare to the specific, repeated instances of direct harassment and significant interference with workplace duties present in Butler.

Torres also cites Laurent-Workman v. Wormuth, 54 F.4th 201 (4th Cir. 2022). The allegations in Torres's amended complaint, however, do not constitute the "repeated invectives of an overtly racial tenor" present in Laurent-Workman. Id. at 212; see also id. at 207 (describing regular abuse suffered by the plaintiff, including yelling, regular racial harassment, and physical violence). Thus, the court grants DEP's motion to dismiss Torres's hostile work environment claims under Title VII and section 1981.

III.

In sum, the court GRANTS defendant's partial motion to dismiss [D.E. 32] and DISMISSES WITHOUT PREJUDICE plaintiff's hostile work environment claims.

SO ORDERED. This 22 day of August, 2023.

JAMES C. DEVER III<br>
United States District Judge

8